[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12012
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 9, 2010
JOHN LEY
CLERK

D.C. Docket No. 4:08-cr-10071-KMM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DIDIER GONZALEZ-VASQUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 9, 2010)

Before HULL, MARTIN and FAY, Circuit Judges.

PER CURIAM:

    Didier Gonzalez-Vasquez appeals his 27-month sentence for conspiracy to

encourage and induce aliens to enter the United States, 8 U.S.C.

§ 1324(a)(1)(A)(v)(I). On appeal, Gonzalez-Vasquez argues that the district court abused its discretion by sentencing him to the high end of the guideline range, and by running his sentence consecutively to his sentences in another federal criminal case. For the reasons set forth below, we affirm.

I.

A grand jury charged Gonzalez-Vasquez with 1 count of conspiracy to encourage and induce aliens to enter the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), and 20 counts of encouraging and inducing an alien to remain in the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and 18 U.S.C. § 2. Pursuant to a written plea agreement, Gonzalez-Vasquez agreed to plead guilty to the conspiracy count of the indictment. The government promised to seek dismissal of the remaining counts. The government also agreed to recommend: (1) a reduction for acceptance of responsibility; (2) a sentence at the low end of the advisory guideline range, as determined by the court; and (3) that Gonzalez-Vasquez's sentence run concurrently with his sentence from another criminal case, *United States v. Gonzalez-Vasquez,* 09-20686-cr-JORDAN.

Gonzalez-Vasquez's presentence investigation report set forth the following facts. On May 27, 2008, the United States Coast Guard Cutter *Chandeleur* was ordered to intercept a vessel with possible migrants on board. The *Chandeleur*

2

approached within one nautical mile of the vessel, activated its blue law enforcement lights, and ordered the vessel to stop. The operator of the vessel, Ricardo Espildora, complied with the order and reduced the vessel's speed. As a Coast Guard boarding team approached the vessel, the officers observed that it was overcrowded with people. The officers directed everyone to remain seated in order to stabilize the vessel, and handed out life jackets to all of the passengers.

Espildora identified himself as the master of the vessel. He stated that he and his crew member, Gonzalez-Vasquez, were on a pleasure trip when they encountered 20 Cuban migrants stranded on Cay Sal. Espildora explained that he intended to return to Miami with the refugees. The vessel did not have a registration number on its hull, and no registration was found on board. Espildora claimed to have borrowed the vessel from a friend, but was unable to give the friend's name. The vessel was carrying 15 gallons of fuel, eight one-gallon containers of water, and 12 personal floatation devices.

Espildora and Gonzalez-Vasquez were subsequently charged with alien smuggling offenses. Gonzalez-Vasquez was arrested on July 28, 2009, in connection with another criminal case involving identity theft and fraudulent credit card activity. In that case, Gonzalez-Vasquez paid Hector Souto to steal credit card numbers using a "skimming" device. Gonzalez-Vasquez pled guilty to

1 count of conspiracy to commit credit card fraud, 1 count of credit card fraud, and 1 count of aggravated identity theft, and was sentenced to a total term of 27 months' imprisonment.

The PSI determined that Gonzalez-Vasquez had a total offense level of 15, a criminal history category of II, and a guideline range of 21 to 27 months' imprisonment. Gonzalez-Vasquez did not object to the PSI's guideline calculations. At the sentencing hearing, Gonzalez-Vasquez noted that the parties had agreed to recommend a sentence at the low end of the guidelines, to run concurrently with his sentences from the credit card fraud case. He argued that a low-end sentence was appropriate in light of his limited role in the offense, his timely guilty plea, which conserved prosecutorial and judicial resources, and the fact that he already had spent 10 months in immigration custody

The district court recognized that Gonzalez-Vasquez and the government had agreed to recommend a sentence at the low end of the guideline range. However, the court concluded that such a sentence would not be sufficient to serve the purposes of sentencing. The court observed that Gonzalez-Vasquez had been in the United States for less than three years, and, during that time period, he had either been incarcerated or involved in criminal activity. The court stated that Gonzalez-Vasquez's "track record" did not "suggest[] that he is going to have a

4

successful, law-abiding lifestyle when he's released from incarceration."

The court noted that it was required to consider the 18 U.S.C. § 3553(a) factors, including the history and characteristics of the defendant, the need to promote respect for the law, and the need to provide adequate deterrence to criminal conduct. The court concluded that a sentence at the low end of the guideline range, or a sentence running concurrently to Gonzalez-Vasquez's sentence in the credit card fraud case, would fail to serve those purposes. The court "appreciate[d]" Gonzalez-Vasquez's efforts to preserve judicial resources by pleading guilty, but it noted that Gonzalez-Vasquez already had received a reduction for acceptance of responsibility. The district court sentenced Gonzalez-Vasquez to the high end of the guideline range, 27 months. The court specified that the sentence was to run consecutively to Gonzalez-Vasquez's sentence in the credit card fraud case.

## II.

We review a sentence imposed by a district court for reasonableness, using an abuse-of-discretion standard. *United States v. Livesay*, 587 F.3d 1274, 1278 (11th Cir. 2009). Similarly, we review the imposition of a consecutive sentence for an abuse of discretion. *United States v. Covington*, 565 F.3d 1336, 1346 (11th Cir. 2009).

We follow a two-step process in reviewing a sentence. First, we must ensure that the district court did not commit a significant procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597, 169 L.Ed.2d 445 (2007). In explaining the reasons for its sentence, the district court "should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356, 127 S.Ct. 2456, 2468, 168 L.Ed.2d 203 (2007). If the district court's sentencing decision is procedurally sound, we must then determine whether the sentence is substantively reasonable in light of the 18 U.S.C. § 3553(a) factors. *Gall*, 552 U.S. at 51, 128 S.Ct. at 597.

The party challenging the sentence has the burden of showing that it is unreasonable in light of the record and the § 3553(a) factors. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). We "recognize that there is a range of reasonable sentences from which the district court may choose," and ordinarily expect a sentence within the defendant's advisory guideline range to be

reasonable. *Id.* We will reverse a sentence as substantively unreasonable only we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*) (quotation omitted).

When a defendant is sentenced for one offense while serving an undischarged term of imprisonment for another, unrelated, offense, the sentence "may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment" for the defendant's offense. U.S.S.G. § 5G1.3(c). In determining whether to impose a consecutive sentence, the district court must consider the § 3553(a) factors, the type and length of the prior sentence, the time likely to be served on the prior sentence, the court that imposed the prior sentence, and any other relevant circumstances. U.S.S.G. § 5G1.3, comment. (n.3(A)). We have explained that the Sentencing Guidelines "evince a preference for consecutive sentences when imprisonment terms are imposed at different times." *United States v. Ballard*, 6 F.3d 1502, 1506 (11th Cir. 1993).

In this case, Gonzalez-Vasquez's contention that the district court failed to

consider certain factors in determining his sentence implicates both procedural and substantive reasonableness. His sentence would be procedurally unreasonable if the district court wholly failed to consider his arguments. *See Rita*, 551 U.S. at 356, 127 S.Ct. at 2468. His sentence would be substantively unreasonable if the district court considered his arguments but failed to give them sufficient weight in determining his sentence. *See Irey*, 612 F.3d at 1190.

With respect to procedural reasonableness, the record shows that the district court gave appropriate consideration to the arguments that Gonzalez-Vasquez raised at the sentencing hearing. The court specifically addressed the parties' sentencing recommendation and Gonzalez-Vasquez's argument that his timely plea of guilty conserved judicial resources, and it is apparent from the record that the court considered his other arguments as well. Thus, no procedural error occurred.

Gonzalez-Vasquez's sentence is also substantively reasonable. Although Gonzalez-Vasquez identified a number of considerations that might have militated in favor of a shorter sentence, the district court did not commit a clear error in judgment by giving other factors more weight. Given the fact that Gonzalez-Vasquez committed two federal criminal offenses in the span of less than two years, a longer sentence was justified based upon his history and characteristics,

the need to promote respect for the law, and the need to protect the public from further crimes committed by Gonzalez-Vasquez. *See* 18 U.S.C. § 3553(a)(1), (2)(A), (2)(C). A sentence at the high end of the guideline range also has the effect of deterring others from committing the same offense. *See* 18 U.S.C. § 3553(a)(2)(B).

It was not a clear error of judgment for the district court to conclude that the sentence recommended by the parties failed to reflect Gonzalez-Vasquez's prior criminal history and likelihood of recidivism. The district court did not have to give significant weight to Gonzalez-Vasquez's apology or the fact that his plea of guilty conserved judicial resources because his acceptance of responsibility was already taken into account in the calculation of his guideline range. Also, the district court did not have to accept Gonzalez-Vasquez's argument that he played a lesser role in the offense because the PSI determined that Gonzalez-Vasquez and Espildora were equally culpable for the smuggling venture. Notably, Gonzalez-Vasquez's sentence is within his advisory guideline range, which we ordinarily expect to be reasonable. *See Talley*, 431 F.3d at 788. We conclude that district court did not abuse its discretion by sentencing Gonzalez-Vasquez to the high end of the guideline range, 27 months.

In addition, the district court also did not abuse its discretion by running

Gonzalez-Vasquez's sentence consecutively to his sentences in the credit card fraud case. The two offenses were committed at separate times and involved different types of harms. Therefore, it was appropriate for the district court to impose consecutive sentences to ensure that Gonzalez-Vasquez was adequately punished for both crimes. Because Gonzalez-Vasquez has not met his burden of showing that his sentence is procedurally or substantively unreasonable, we affirm.

**AFFIRMED.**